1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       CENTRAL DISTRICT OF CALIFORNIA

10   ROSA MORENO DE CERILLO,        )   Case No. ED CV 05-886-DSF (PJW)
                                     )
11                 Plaintiff,        )
                                     )   MEMORANDUM OPINION AND ORDER
12         v.                        )
                                     )
13   JO ANNE B. BARNHART,            )
     Commissioner of the            )
14   Social Security Administration, )
                                     )
15                 Defendant.        )
     _____)

16

17                                   I.

18                             INTRODUCTION

19        After Plaintiff was denied her claim for Supplemental Security

20   Income ("SSI"), she filed this action, seeking to overturn the

21   decision of Defendant Social Security Administration ("the Agency").

22   She claims that the Agency erred when it failed to consider one of her

23   severe impairments, confused her residual functional capacity with her

24   non-exertional limitations, relied on the Grids, and failed to fully

25   develop the record.  For the following reasons, the Agency's decision

26   is affirmed.

27

28

II.

SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff was born on June 15, 1949, and was 55 years old at the time of the administrative hearing in this case. (Administrative Record ("AF") 224.) She has had limited formal education in both Mexico and the United States, and it appears that she never made it past the fifth grade. (AR 205, 224.) She has very little work experience. (AR 225.) In 2000, she worked as an in-home health service worker for about nine months. (AR 225.) In 2003, she worked in a factory for about one year. (AR 225.)

In October 2001, Plaintiff applied for SSI benefits. (AR 13, 93.) Her claim was denied initially and she did not appeal that decision. (AR 93.)

On February 18, 2003, Plaintiff filed a new application for SSI. (AR 92.) This claim was also denied initially and on reconsideration. She then requested and was granted a hearing before an administrative law judge ("ALJ"). On January 27, 2005, Plaintiff appeared with counsel at the administrative hearing. (AR 220-247.) Plaintiff, two medical experts, and a vocational expert testified. (AR 220-247.)

In June 2005, the ALJ issued a decision denying Plaintiff's application for benefits. (AR 13-26.) He found at step one that Plaintiff was not working. (AR 14.) At step two, he determined that Plaintiff's only severe impairment was major depression with psychotic symptoms in questionable remission. (AR 14.) The ALJ determined at step three that Plaintiff's condition did not meet a Listing. At step four, he determined that Plaintiff had the residual functional capacity to perform work at all exertional levels, but was limited mentally to simple, repetitive tasks. (AR 21.) He found that

2

Plaintiff had no prior relevant work experience, at least none that could be documented. (AR 24.) At step five, using the Medical-Vocational Guidelines (the "Grids"), he determined that Plaintiff could perform other jobs in the economy. (AR 24-25.)

Plaintiff appealed the ALJ's decision to the Appeals Council, which left the ALJ's decision undisturbed. She then filed the instant action in this Court, seeking reversal and an order to the Agency to pay benefits. Alternatively, she requested that the case be remanded to the Agency for a new administrative hearing before a different ALJ.

III.

ANALYSIS

Plaintiff contends that the ALJ erred four times:

1. He failed to conclude that Plaintiff's borderline intellectual functioning was a severe impairment;

2. He confused Plaintiff's residual functional capacity assessment with her non-exertional limitations;

3. He failed to solicit vocational expert testimony on whether Plaintiff could still work despite her non-exertional limitations;

4. He failed to properly develop the record.

For the following reasons, the Court concludes that the Agency's determination that Plaintiff is not entitled to benefits should be affirmed.

A.  Standard of Review

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

3

1  last for a continuous period of not less than twelve months." 42
2  U.S.C. § 1382c(a)(3)(A). The Court may overturn the ALJ's decision
3  that a claimant is not disabled only if the decision is not supported
4  by substantial evidence or is based on legal error. *See Magallanes v.*
5  *Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

6      Substantial evidence "'means such relevant evidence as a
7  reasonable mind might accept as adequate to support a conclusion.'"
8  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison*
9  *Co. v. NLRB*, 305 U.S. 197, 229 (1938).) It is "more than a mere
10 scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d
11 599, 601 (9th Cir. 1998), and "does not mean a large or considerable
12 amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
13 If the record evidence can reasonably support either affirming or
14 reversing the Agency's decision, this Court must not substitute its
15 judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094,
16 1098 (9th Cir. 1999). Further, if the ALJ committed error but the
17 error was harmless, reversal is not required. *See Batson v. Comm'r of*
18 *Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the
19 harmless error standard).

20 B.  <u>The ALJ Did Not Err In Failing To Find Plaintiff's Borderline</u>
21     <u>Intellectual Functioning A Severe Impairment</u>

22      As part of the Agency's evaluation of Plaintiff's application for
23 benefits, she was sent by the Agency to a psychologist, Rosa Colonna.
24 (AR 204-209.) Dr. Colonna tested Plaintiff and determined that she
25 had an IQ of 71. (AR 71.) An IQ of 71 amounts to borderline
26
27
28

4

intellectual functioning.[1]   (AR 208.)   Plaintiff contends that this is a severe impairment and that the ALJ's failure to make this finding at step two was error.   As explained below, this argument is rejected.

At step two of the sequential evaluation process, the ALJ is tasked with reviewing the record and identifying a claimant's "severe" impairments.   20 C.F.R. § 416.920(a)(4)(ii).   A "severe" impairment is one that significantly affects a claimant's ability to perform basic work-related activities.   20 C.F.R. § 416.921.   Basic work-related activities include the ability to understand, carry out, and remember simple instructions, and to use judgment.   20 C.F.R. § 416.921.   An impairment is non-severe only if it amounts to a slight abnormality, with no more than a minimal effect on the claimant's ability to do work.   *Carrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994), (citing *Bowen v. Yuckert*, 482 U.S.C. 137, 153-54 (1987)).

In listing Plaintiff's impairments at step two, the ALJ identified four non-severe impairments--obesity, hypertension, elevated cholesterol, and minimal sphincter tone--and one severe impairment--major depression with psychotic symptoms in questionable remission.   (AR 14.)   The ALJ never even mentioned Plaintiff's borderline intellectual functioning in his step-two analysis.   Later, in a discussion of the medical evidence, the ALJ discounted Dr. Colonna's opinions--including her IQ scores--because he found that she had examined Plaintiff only once, she had included three "rule-out" diagnoses, and her opinion was based "on the subjective complaints of

_____

[1]   Borderline intellectual functioning is a term used to describe individuals who exhibit IQ scores in the 71-84 range.   Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (2005) (hereinafter "DSM-IV-TR"), p. 740.

1   the claimant, the questionable results of psychological testing, and

2   speculation." (AR 18.) As explained below, the ALJ's conclusion that

3   Dr. Colonna's IQ testing was suspect in part because it relied on

4   Plaintiff's subjective input is dispositive of this issue.

5       "Credibility determinations are the province of the ALJ." *Fair*,

6   885 F.2d at 604. For that reason, this Court will not second-guess an

7   unchallenged credibility finding. *See Solomon v. Secretary of Health*

8   *and Human Services*, No. 91-CV-77171 DT, 1992 WL 478586, at *2 (E.D.

9   Mich. Aug. 13, 1992)("The Plaintiff has not challenged the ALJ's

10  determination of her credibility, and the Court accepts it as

11  accurate."). The ALJ found that Plaintiff was not credible and she

12  has not challenged that finding. As a result, Plaintiff cannot "show

13  that the ALJ erred in [his] decision not to credit [Dr. Colonna's]

14  assessment, which was based in large part on [Plaintiff's]

15  statements." *See Siska v. Barnhart*, No. C 00-4788 MMC, 2002 WL

16  31750220, at *3 (N.D. Cal. Dec. 4, 2002).

17      Dr. Colonna's IQ testing was the only evidence in this record

18  that Plaintiff suffered from borderline intellectual functioning and

19  the ALJ rejected it. Absent this evidence, there was no basis for

20  concluding that Plaintiff suffered from borderline intellectual

21  functioning and the ALJ did not err in not listing it as one of

22  Plaintiff's impairments.[2]

23

24      [2] The Court does not find the ALJ's other reasons for rejecting
    Dr. Colonna's opinion very compelling. He found that the opinion was
25  less persuasive because Dr. Colonna saw Plaintiff only one time and
    she provided several "rule-out" diagnoses. First, presumably, a
26  psychologist can and often does administer an IQ test in a single
    setting. This fact alone does not diminish the value of the test
27  results. Second, the fact that Dr. Colonna provided three rule-out
    diagnoses after a single session with Plaintiff does not undermine her
28

C. <u>The ALJ's Residual Functional Capacity Assessment Was Proper</u>

Plaintiff complains that the ALJ's residual functional capacity assessment--finding that Plaintiff was limited to simple, repetitive tasks--was based on error.  Plaintiff argues that the ALJ must have been mistakenly taking into account Plaintiff's borderline intellectual functioning.  As explained below, this claim is without merit.

Though it could have been explained more clearly, it appears that the ALJ's restriction on Plaintiff to simple, repetitive tasks was based on his finding that Plaintiff suffered from "depression with psychotic features in questionable remission." (AR 21.)  The ALJ as much said so in his decision:

> Even though mental limitations are not justified by the
> record, especially in light of the claimant's treatment
> history and the December 2004 mental status examination with
> Dr. Strong, the Administrative Law Judge gives the claimant
> the benefit of the doubt and finds that her mental
> impairment limits her to simple, repetitive tasks.

(AR 20.)

Dr. Strong was Plaintiff's psychiatrist and diagnosed Plaintiff with depression, not borderline intellectual functioning.  The ALJ's determination that Plaintiff was limited to simple, repetitive tasks was based on the ALJ's finding that Plaintiff was suffering from depression, which was controlled with medicine.  Therefore, remand on this issue is not required.

_____

work, nor does the ALJ explain why he thinks that it does.  Rather, it shows that Dr. Colonna recognized the need to further evaluate Plaintiff's condition over an extended period of time.

1  D.    <u>The ALJ Was Not Required To Obtain Vocational Expert Testimony</u>

2        Plaintiff complains that the ALJ improperly relied on the Grids

3  to reach his finding that Plaintiff could find work in the economy.

4  Plaintiff argues that because she suffered from borderline

5  intellectual functioning--a significant non-exertional limitation--the

6  ALJ was required to call a vocational expert.  Again, the Court

7  disagrees.

8        As explained above, the ALJ properly rejected Dr. Colonna's

9  opinion that Plaintiff suffered from borderline intellectual

10 functioning.  For that reason, the ALJ was not required to call a

11 vocational expert to opine whether Plaintiff could still work despite

12 this condition.  Further, though, in an abundance of caution, the ALJ

13 limited Plaintiff to simple, repetitive work, it does not appear that

14 this limitation significantly affected the range of unskilled work

15 that she could perform, necessitating input from a vocational expert.

16 *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573,

17 577 (9th Cir. 1988)(explaining Grids can be used even if claimant

18 suffers from non-exertional limitations provided these limitations do

19 not significantly limit the range of work claimant is physically able

20 to do).  For these reasons, the ALJ's use of the Grids was not in

21 error.

22 E.    <u>The ALJ Was Not Required To Re-Contact Plaintiff's Treating</u>

23       <u>Doctor</u>

24       In her fourth claim of error, Plaintiff maintains that the ALJ

25 erred when he failed to re-contact one of her treating doctors and

26 find out what her opinion was regarding Plaintiff's ability to work.

27 There is no support for this claim.

28

The ALJ is tasked with fully and fairly developing the record to insure that a claimant receives a fair hearing before the Agency. *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  This is so even where, as here, the claimant is represented by counsel.  *Id*.  Where the ALJ cannot understand a treating doctor's views, or more evidence is needed to fully consider those views, the ALJ has a duty to re-contact the treating doctor and obtain further input.  20 C.F.R. § 404.1512(e).  In addition, where a treating physician's opinion or supporting records contain a conflict or ambiguity or they are inadequate for the ALJ to determine whether a claimant is disabled, the ALJ is required to re-contact the treating physician and clarify the record.  *Id.*  Ultimately, however, Plaintiff has the burden of presenting evidence within his control that shows eligibility for benefits.  *See*, *e.g.*, 20 C.F.R. § 416.912; *see also Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

Plaintiff complains that the ALJ failed to consult with her treating doctor at La Puente Valley Mental Health Center, despite the fact that her doctor had not specifically offered an opinion regarding Plaintiff's ability to work.  The record does not support Plaintiff's claim that re-contacting was necessary.

The records from La Puente Valley Mental Health Center are included in the administrative record.  (AR 173-182, 217-219.)  They encompass treatment notes, psychiatric evaluations, and prescription orders.  These notes include detailed evaluations by Plaintiff's treating doctor, psychiatrist Barbara Strong, about Plaintiff's condition, treatment, and prognosis.  (AR 173-175, 218.)  It is plain from these records that Dr. Strong believed that Plaintiff's condition

9

did not preclude her from working.   In an "Initial Psychiatric
Evaluation" from January 2002, Dr. Strong noted:

> Memory is intact.   Mood is relaxed.   Affect is appropriate
> to content.   Speech is normal.   Patient denies any auditory
> or visual hallucinations.   No delusions were elicited.
> Patient also denies any suicidal ideations.   Insight and
> judgment appear[] to be adequate.
>
> . . .
>
> She is well stabilized on her current medication.

(AR 174.)

At that time, Dr. Strong assessed Plaintiff's Global Assessment
of Functioning ("GAF") at 55.[3]

In a December 2004 "Psychiatric Re-Assessment Report," a check-
the-box form, Dr. Strong noted that Plaintiff was doing quite well.
(AR 218.)   She assessed Plaintiff's mental status as "appropriate" in
all respects and indicated that her prognosis was good.   (AR 218.)
She again assessed Plaintiff's GAF at 55.

There is nothing in Dr. Strong's records to suggest that she
believed that Plaintiff could not work.   To the contrary, Dr. Strong's
records reflect that Plaintiff was well stabilized with medication in
2002, and had actually improved by 2004.   (AR 174, 218.)   Further,

---

[3]   The Global Assessment of Functioning or GAF scale reports a
"clinician's judgment of the individual's overall level of
functioning," which is used in "planning treatment and measuring its
impact, and in predicting outcome."   American Psychiatric Association,
*Diagnostic & Statistical Manual of Mental Disorders*, Fourth Edition,
Text Revision (hereinafter "DSM-IV-TR"), p. 32 (4th ed. 2005).   A GAF
of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and
circumstantial speech, occasional panic attacks) or moderate
difficulty in social, occupational, or school functioning (e.g., few
friends, conflicts with peers or co-workers)."   (*Id*. at 34.)

there was nothing ambiguous about her views, warranting re-contacting.
Finally, the ALJ issued his decision in this case in June 2005, more
than 18 months ago.  In all that time, Plaintiff, who was represented
by counsel before the Agency and is represented by counsel here, never
produced a single document suggesting that Dr. Strong had a different
view.  Ultimately, it is Plaintiff's burden to present evidence that
he is disabled, *Meanel*, 172 F.3d at 1113, and Plaintiff has failed to
do so.  For that reason, this claim, too, is denied.

IV.

CONCLUSION

For the reasons, the Agency's decision is affirmed and the case
is dismissed with prejudice.

IT IS SO ORDERED.

DATED:     March  6  , 2007.


_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\CERILLO, R\Memo Opinion_Ord.wpd

11